**AGGELIKOS PROSTATIS CORP., Plaintiff,**

v.

**SHUN DA SHIPPING GROUP LTD. and Zheng Tai Shipping Group Ltd., Defendants.**

**No. 08 Civ. 9094 (JGK).**

United States District Court, S.D. New York.

Feb. 2, 2009.

Patrick F. Lennon, Lennon, Murphy & Lennon, LLC, New York, NY, for Plaintiff.

## OPINION AND ORDER

JOHN G. KOELTL, District Judge:

Defendant Zheng Tai Shipping Group Limited ("Zheng Tai") moves pursuant to Rule E(4)(f) of the Supplemental Rules of Certain Admiralty and Maritime Claims to vacate an order of maritime attachment issued by this Court on October 22, 2008. On that date, the plaintiff, Aggelikos Prostatis Corp. ("Aggelikos"), filed a verified complaint against Zheng Tai and defendant Shun Da Shipping Group Limited ("Shun Da"), alleging a breach of contract claim in the amount of $16,688,015.11, and seeking an ex parte order of attachment in aid of a London arbitration (the "Verified Complaint"). The Court reviewed the Verified Complaint and attorney affidavit and, after determining that the conditions of Supplemental Rule B appeared to exist, entered an order authorizing process of maritime attachment and garnishment against the assets of Zheng Tai and Shun Da (the "Attachment Order"). Pursuant to the Attachment Order, the plaintiff attached several electronic fund transfers to or from defendant Zheng Tai.

For the reasons discussed below, the defendant's motion to vacate the order of attachment is **granted.**

I

Rule E(4)(f) provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." In order to obtain an attachment, apart from satisfying the filing and service requirements of Rules B and E, the plaintiff bears the burden of showing that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir.2006); *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F.Supp.2d 275, 278 (S.D.N.Y.2006). The Court must vacate an attachment if the plaintiff fails to sustain its burden of demonstrating that the requirements of Rules B and E are satisfied. *Aqua Stoli*, 460 F.3d at 445.

II

In the Verified Complaint, the plaintiff asserts the following facts. The plaintiff is a foreign corporation existing under the

laws of Liberia, and defendants Zheng Tai and Shun Da are foreign corporations existing under the laws of China. At all relevant times, the plaintiff was the owner of a motor vessel known as "Angelic Protector" (the "Vessel"). On or about July 17, 2008, the plaintiff contracted with Shun Da to sell the Vessel to Shun Da under certain terms and conditions for $19.5 million. Under the Memorandum of Agreement executed by the plaintiff and Shun Da, (the "Agreement"), Shun Da was to pay a security deposit of 15% of the purchase price, or $2,925,100.00, within four banking days from the date of the Agreement. The balance of the purchase price, together with bunker and lub oil charges, were to be paid in cash into an account in the plaintiff's name prior to October 16, 2008, the expected date of delivery of the Vessel. (*See* Compl. ¶¶ 2–10.)

The plaintiff alleges that Shun Da breached the Agreement by failing to remit the balance of the purchase price of the Vessel and/or failing to carry out the terms and conditions for the purchase of the Vessel. (*See* Compl. ¶ 12.) It further alleges, and defendant Zheng Tai concedes, that the security deposit owed to the plaintiff was paid by Zheng Tai. (*See* Compl. ¶¶ 24–25; Declaration of Wu Zhengmao ("Wu Decl.") ¶¶ 18–20.) Primarily on the basis of this payment, the plaintiff alleges that Zheng Tai is either a receiving/paying agent of Shun Da, partners and/or joint venturers with Shun Da, or otherwise affiliated with Shun Da. (*See* Compl. ¶¶ 21–23.)

### III

Defendant Zheng Tai moves to vacate the order of attachment on two alternative grounds. First, it argues that the plaintiff has no valid prima facie admiralty claim against it because the underlying cause of action—breach of a contract to purchase a vessel—does not provide a basis for admiralty jurisdiction. Second, it argues that there is no basis for the attachment because Shun Da has no interest in the attached funds, and Zheng Tai is not the alter ego of Shun Da.

■ It is "elementary hornbook law that a contract for the sale of a vessel is not within the admiralty jurisdiction of the district courts." *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 675 F.Supp. 146, 150 (S.D.N.Y.1987), *aff'd* 875 F.2d 388 (2d Cir. 1989); *see also CTI–Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377, 380 n. 4 (2d Cir.1982); *The Ada*, 250 F. 194, 197–98 (2d Cir.1918) (Rogers, J., concurring). Indeed, a leading treatise on admiralty law instructs that "[a]lthough never held by the Supreme Court, it has been well established by the lower courts that contracts for the sale of the vessel are non-maritime. The doctrine is perhaps best understood as an analogy to the rule that excludes shipbuilding contracts from the admiralty jurisdiction." 1 S. Friedell, Benedict on Admiralty § 186 (7th ed. 2008). The plaintiff argues that "the seascape" has changed in recent years with respect to what disputes fall within the admiralty jurisdiction. The plaintiff is correct that the way courts determine what disputes fall within the admiralty jurisdiction has changed. However, this change has not swept within the admiralty jurisdiction a contract that is strictly for the sale of a vessel, such as the contract in this case.

The chief cases credited by the plaintiff with "alter[ing] the seascape" of admiralty jurisdiction are *Norfolk S. Ry. Co. v. James N. Kirby, Pty. Ltd.*, 543 U.S. 14, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004), and *Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 413 F.3d 307 (2d Cir.2005). *Kirby* involved two bills of lading that provided for the transportation of goods from Australia to Alabama, which required carriage by sea from Australia to

Savannah, Georgia and carriage by land from Savannah, Georgia to Huntsville, Alabama. *Kirby,* 543 U.S. at 18–19, 125 S.Ct. 385. The Supreme Court held that because the "primary objective [of the bills of lading] is to accomplish the transportation of goods by sea from Australia to the eastern coast of the United States," the contracts were maritime in nature. *Id.* at 24, 125 S.Ct. 385. The rationale of *Kirby* was that maritime law must catch up with the modern realities of maritime transportation, which often includes a land component. *See id.* at 25, 125 S.Ct. 385 ("Maritime commerce has evolved along with the nature of transportation and is often inseparable from some land-based obligations. The international transportation industry clearly has moved into a new era . . . .") (internal quotation marks omitted).

*Kirby* loosened the boundaries of admiralty jurisdiction. The Supreme Court criticized in broad terms the rigid "spatial approach" taken by some lower federal courts in deciding whether intermodal transportation contracts for intercontinental shipping were maritime in nature. These courts "held that admiralty jurisdiction does not extend to contracts which require maritime and nonmaritime transportation, unless the nonmaritime transportation is merely incidental—and that long-distance land travel is not incidental." *Id.* at 26, 125 S.Ct. 385. The Supreme Court's holding in *Kirby* invalidated that approach to distinguishing maritime from nonmaritime contracts, which "depend[ed] solely on geography." *Id.* at 27, 125 S.Ct. 385. The Supreme Court held that "the boundaries of admiralty jurisdiction over contracts . . . [are] conceptual, rather than spatial," and instructed that "[t]o ascertain whether a contract is a maritime one . . . . The answer depends upon the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." *Id.* at 23–24, 125 S.Ct. 385 (inter-

nal quotation marks, alterations, and ellipses omitted).

In *Folksamerica,* the Court of Appeals for the Second Circuit echoed *Kirby*'s "primary objective" inquiry. The Court of Appeals held that an insurance policy with both marine and land components was within the admiralty jurisdiction because "the insurance contract at issue is primarily or principally concerned with maritime objectives, although there were incidental non-maritime elements." *Folksamerica,* 413 F.3d at 315. By applying *Kirby* to an insurance contract, the Court of Appeals extended the scope of the analysis in *Kirby* beyond the determination of whether transportation contracts were maritime in nature. The Court of Appeals wrote that *Kirby* "suggests a global principle" that a "mixed" contract comprised of both maritime and nonmaritime components should be considered maritime in nature if "the primary or principal objective" of the contract is maritime commerce. *Id.* Because the insurance contract in *Folksamerica* had marine insurance as its principal object, and it is well established that marine insurance is maritime in nature, *see Jeffcott v. Aetna Ins. Co.,* 129 F.2d 582, 584 (2d Cir.1942) (citing cases), the Court of Appeals held that the insurance contract was maritime in nature. *See Folksamerica,* 413 F.3d at 315.

The change of approach dictated by *Kirby* and *Folksamerica* does not alter the analysis of whether the contract for the sale of the Vessel in this case was maritime in nature. The contract in this case was not a mixed contract comprised of both marine components over which the Court has well-established admiralty jurisdiction and land components, as was the case in *Kirby* and *Folksamerica.* Rather, there is no component of the contract in this case over which the Court has well-established admiralty jurisdiction. On the

contrary, it is well established that the Court lacks admiralty jurisdiction over contracts for the sale of vessels. Thus the analyses in *Kirby* and *Folksamerica*, where the issue was whether a nonmaritime element precluded a contract with a maritime element from being maritime in nature, do not implicate the contract in this case. The primary and indeed only objective of the contract in this case, the sale of a vessel, was not maritime.

The only marine aspect to the contract in this case is that the object to be sold was a ship. But in *Kirby* itself, the Supreme Court instructed that "[t]o ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel was involved in the dispute ...." *Kirby*, 543 U.S. at 23, 125 S.Ct. 385. Indeed, it would not comport with the "conceptual" approach dictated by *Kirby* to categorize contracts that are fundamentally sales contracts as maritime contracts simply because a ship is involved.

The cases in this district that have dealt with contracts for the sale of vessels after *Kirby* do not support the plaintiff's expansive reading of the Supreme Court's analysis in that case, or its equally liberal reading of the Court of Appeals' analysis in *Folksamerica*. In *Vrita Marine Co., Ltd. v. Seagulf Trading LLC*, 572 F.Supp.2d 411, 411 (S.D.N.Y.2008), Judge Rakoff explicitly applied the *Kirby* analysis in holding that "contracts for the sale of a vessel are not maritime in nature." Judge Rakoff reasoned that such contracts "d[o] not have as [their] 'primary objective' either a 'maritime service' or a 'maritime transaction ....'" *Id.* (quoting *Kirby*, 543 U.S. at 24, 125 S.Ct. 385). Judge Rakoff also noted that just because "a vessel is 'involved in the dispute' does not make 'the principal objective of the contract maritime commerce.'" *Id.* at 411–12 (quoting *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43 (2d Cir.2008)) (alterations and ellipses omitted). Judge Baer has also held, after *Kirby*, that "[c]ontracts for the sale of ships are not cognizable in admiralty." *Exmar Shipping, N.V. v. Polar Shipping S.A.*, No. 06 Civ. 12991, 2008 WL 3992290, at *3, 2008 U.S. Dist. LEXIS 65504, at *9 (S.D.N.Y.2008).

Most recently, Judge Gardephe relied on *Vrita Marine* in declining to issue an order of maritime attachment relating to the alleged breach of a contract to purchase a vessel. *See Unicorn Bulk Traders Ltd. v. Fortune Maritime Enters., Inc.*, No. 08 Civ. 9710, 2009 WL 125751, at *3 (S.D.N.Y. Jan. 20, 2009). In *Unicorn Bulk*, Judge Gardephe reasoned that "there is a controlling Second Circuit decision—*The Ada* [ ]—holding that a contract to purchase a vessel at a fixed price is not justiciable in admiralty." *Id.* at *2. Judge Gardephe found the argument that "the Supreme Court [in *Kirby* ] and Second Circuit [in *Folksamerica* ] have overruled *The Ada sub silentio*, at least with respect to *The Ada's* holding that a contract for the sale of a ship is not maritime in nature," to be unpersuasive. *Id.* at *3. He noted that "[t]his Court is bound to follow controlling Second Circuit precedent unless that precedent is overruled or reversed—even if, as here, the precedent has been criticized by scholars and certain courts in other Circuits." *Id.* at *2.

To support its broad interpretation of *Kirby* and *Folksamerica*, the plaintiff seeks to rely on *Kalafrana Shipping Ltd. v. Sea Gull Shipping Co. S.A.R.L.*, 591 F.Supp.2d 505 (S.D.N.Y.2008). In *Kalafrana*, Judge Schiendlin held that "a contract for the purchase of a launched ship that has been plying the seas for some time" was, in the wake of *Kirby*, a maritime contract. *Id.* at 509. However, the contract in *Kalafrana* was "mixed" like the contracts in *Kirby* and *Folksamerica*; it provided for both the sale of a vessel and

for the seller to "make any necessary repairs to the vessel." *Id.* at 510. It is well established that ship repair contracts are considered maritime in nature. *See CTI-Container,* 682 F.2d at 380 n. 4. Thus, the holding in *Kalafrana* reflects the new approach to mixed contracts established in *Kirby* and reinforced in *Folksamerica.* That approach does not apply in this case because the contract in this case was not comprised of a mix of well-established maritime components and nonmaritime components. *Cf. Unicorn Bulk,* 2009 WL 125751, at *3 ("The Court declines to follow *Kalafrana* for a second reason: as noted above, the contract at issue there was a "mixed" contract, like the contracts at issue in *Kirby* and *Folksamerica.* "). To the extent that the language in *Kalafrana* can be read to support the argument that after *Kirby* and *Folksamerica,* a contract providing only for the sale of a vessel falls within the admiralty jurisdiction, the reasoning of *Kalafrana* is contrary to well-established persuasive precedent.

For the reasons explained above, a contract solely for the sale of a vessel does not fall within the admiralty jurisdiction. Therefore, the plaintiff in this case does not have a valid prima facie admiralty claim against defendant Zheng Tai, and the attachment must be vacated. Thus, the Court need not reach the alternative ground advanced by the defendant for vacating the attachment. Similarly, the plaintiff's request for leave to amend its Verified Complaint to take into account evidence of an alter-ego relationship between defendants Zheng Tai and Shun Da is moot, because such evidence would not provide a basis for admiralty jurisdiction.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed they are either moot or without merit. Therefore, the defendant's motion to vacate the attachment against Zheng Tai is **granted.** The writ of attachment against Zheng Tai is **vacated.**

**SO ORDERED.**